UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DONEL BUCKMASTER,

        Plaintiff,

  v.                                          Case No. 05-C-0166

LESLIE A. WYMAN, *et al.*,

        Defendants.

## DECISION AND ORDER

Plaintiff Donel Buckmaster sued Leslie A. Wyman, Sharon Bauer, Robert Novotny, and John Dietz,[1] trustees of the Service & Supply Employee Stock Ownership Plan (ESOP), for violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* Wyman was also the president of Service & Supply. Plaintiff claims that the defendants breached the fiduciary duties owed by them to the ESOP under 29 U.S.C. § 1109. Defendants have now moved for summary judgment on all plaintiff's claims. Also pending before the court are defendants' motions to strike putative class and plaintiff's affidavits. Each of the motions will be addressed herein.

---

[1] Wyman and Dietz also served as directors of Service & Supply. (Compl. ¶¶ 16-17; First Am. Ans. ¶¶ 16-17.) The complaint also names Donald Westley and Kenneth Lang, the remaining members of the board of directors, as defendants. Since there is no allegation that either Westley or Lang served as an ERISA fiduciary, it is unclear why either is a party to this case.

## BACKGROUND[2]

Plaintiff formerly worked as vice-president of sales and marketing for Service & Supply, an Appleton-based heating and air conditioning contractor. Plaintiff also participated in the ESOP, a self-funded and self-administered ERISA benefits plan. (Compl. ¶ 12; First Am. Ans. ¶ 12.) The ESOP held, amongst other assets, the majority of Service & Supply's stock. (DPFOF ¶ 5.) The plan held the stock in trust and allocated it to individual accounts of the ESOP participants. (DPFOF ¶¶ 4, 6.) Defendants Wyman, Bauer, Novotny, and Dietz served as ESOP trustees for part or all of the time during which the events relevant to this case occurred. (Compl. ¶¶ 12-16; First Am. Ans. ¶¶ 12-16.)

In the fall of 2001, Service & Supply's board of directors, with Wyman abstaining, voted to sell two real estate parcels–one in Appleton and the other in Wisconsin Rapids–to a limited liability company owned in part by Wyman. (DPFOF ¶¶ 10-12, 14.) At the same time, Service & Supply entered into a ten-year lease on the properties. (DPFOF ¶ 13.) Plaintiff learned about this sale-leaseback transaction on October 17, 2001. (DPFOF ¶ 19.) He was concerned that the sale-leaseback would not benefit Service & Supply, and he conveyed his concerns to Wyman, who called an employees' meeting in December 2001 in an attempt to allay them. (DPFOF ¶ 21-25.) Plaintiff was still not satisfied with the information provided at the meeting. (DPFOF ¶¶ 27-28.) He felt the

---

[2]The facts are, for the most part, taken from Defendants' Proposed Findings of Fact (DPFOF). Plaintiff failed to respond to defendants' proposed findings of fact, which means they are undisputed. *See* Civil L.R. 56.2(e); *Corder v. Lucent Technologies Inc.*, 162 F.3d 924, 927 (7th Cir. 1998). Plaintiff also filed proposed findings of fact based upon several affidavits which are subject to defendants' motion to strike, discussed *infra*. With some exceptions, plaintiff's proposed facts are not relevant to the narrow legal issues raised in defendants' motion for summary judgment. Plaintiff's proposed facts are useful, however, for an understanding of plaintiff's theory of the case.

2

price paid for the property was much less than it should have been, but took no action at that time. (Brostrom Aff., Ex. B. at 35-36.)

In September 2004, Auer Steel & Heating Supply Co. offered to purchase the assets of Service & Supply. On October 4, 2004, Temperature Systems, Inc. (TSI) made a competing "Top Dollar Last Offer" for the assets of Service & Supply. (Riker Aff., ¶ 10.) TSI had previously requested complete financial information and balance sheets from Service & Supply; however, Wyman had refused to provide such information, and as a result, TSI's offer was couched with some reservations and hold-backs. (*Id.* ¶¶ 9-11.) Wyman allegedly told the other defendants that they could not consider TSI's offer because Auer's offer was subject to a "no-shop" clause; however, this clause had expired on July 28, 2004.[3] Plaintiff also claims that Wyman denied he would be going to work for Auer after the sale even though he had already entered into an employment agreement with Auer prior to the sale.

In November 2004, the directors of Service & Supply proposed a sale of substantially all the company's assets to Auer. (DPFOF ¶ 30.) As part of that transaction, Service & Supply paid $100,000 to buy down its remaining obligations under the ten-year lease on the Appleton property. (DPFOF ¶ 31.) Pursuant to the ESOP plan documents, Service & Supply held pass-through voting for ESOP participants, who directed the ESOP trustees how to vote their ESOP shares. (DPFOF ¶ 32.) While plaintiff voted his shares against the sale, the majority of shares were voted in favor of the sale and the sale was thus approved. (DPFOF ¶ 33-34.)

On February 14, 2005, plaintiff filed his complaint. Plaintiff alleges that the ESOP trustees breached their fiduciary duties under ERISA in failing to challenge the 2001 sale-leaseback

---

[3]This allegation is not supported by competent evidence. *See infra* at 8.

3

agreement between Wyman and the company. He alleges that they further breached their fiduciary duties when they failed to prevent the 2004 sale to Auer. Plaintiff claims that the ESOP participants received less for their shares in the 2004 sale than they otherwise would have because of the 2001 sale-leaseback. Plaintiff also alleges that had defendants solicited other offers to purchase the assets of Service & Supply, TSI would have made a higher offer than Auer, resulting in a higher share price for ESOP participants. Based upon these allegations, plaintiff seeks both compensatory and punitive damages, and various forms of equitable relief.

## ANALYSIS

As is well known, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any

4

essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. Therefore, summary judgment is appropriate against a party who, after adequate time for discovery and in the face of a properly supported summary judgment motion, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

Whether a material issue of fact is "genuine" necessarily requires some qualitative determination of sufficiency of the evidence. To defeat a properly supported motion for summary judgment, the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in its favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. A "metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587. "A district judge faced with [a summary judgment] motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572-73 (7th Cir. 1989) (citations omitted).

At the outset, the court notes that defendants have moved to strike portions of the Affidavits of Donel Buckmaster (Docket #45), Rhea Myers (Docket #46), and Terrence Riker (Docket #47) filed by plaintiff in opposition to defendants' motion for summary judgment. Plaintiff opposes the motion. The court finds, as defendants contend, that most of the challenged statements are

5

immaterial to the narrow legal issues raised by defendants' motion for summary judgment and it is therefore unnecessary to decide this motion which would essentially require a paragraph by paragraph analysis of a twenty-page, sixty-one paragraph affidavit. The court does note, however, that defendants' motion is not without merit. The opinions and conclusions of plaintiff concerning another party's state of mind are not admissible, since one person is not competent to testify what another person is thinking. *See* Fed. R. Evid. 602. Likewise, argumentative or conclusory statements of fact, such as "The failure to give notice of the intention to purchase the real estate to the ESOP participants was part of a conspiracy of the Board, ESOP trustees and Wyman to divert value from the stock price of the company and to make the company unattractive to purchasers" (Buckmaster Aff. ¶ 19), are not competent evidence. Thus, plaintiff's assertions as to what defendant Wyman's plan was and how he intended to carry it out do not constitute admissible evidence. Opinions based upon special knowledge or experience may be offered only by qualified experts. Fed. R. Evid. 702. Under the scheduling order governing this matter, plaintiff's experts and their reports were to have been served on the defendants by April 15, 2006. If plaintiff failed to disclose any expert he may not offer such evidence now. And given his own candid acknowledgment that he lacks the required expertise to render expert opinion testimony on at least the real estate valuation questions, it is doubtful his personal opinion would be admissible in any event. Finally, documents obtained through discovery from defendants are not, for that reason alone, admissible. Having noted these deficiencies in some of the affidavits filed by plaintiff, as opposed to striking the challenged affidavits in full, the court will deny the motion as moot and proceed to consideration of defendants' motion for summary judgment.

6

Case 1:05-cv-00166-WCG    Filed 06/23/06    Page 6 of 12    Document 68

Plaintiff's claim arising out of the 2001 sale-leaseback is poorly developed. Plaintiff seemingly contends that Wyman, an ESOP trustee, violated his duty of loyalty by engaging in a transaction that reduced the value of the ESOP's Service & Supply stock. Dietz, Bauer, and Novotny possibly breached their duty of care by neglecting to bring a shareholder derivative action against the directors who voted to approve the sale-leaseback. As a result of these breaches, the ESOP allegedly received less for its Service & Supply stock in 2004 than it would have absent the sale-leaseback. The court will not venture further guesses as to what plaintiff's claim arising out of the sale-leaseback is, however, because ERISA's three-year statute of limitations, 29 U.S.C. § 1113, plainly bars that claim.[4]

Plaintiff learned about the sale-leaseback on October 17, 2001, and immediately became concerned about the transaction. Nevertheless, he took no legal action until February 14, 2005, when he filed this case. While plaintiff concedes that he knew about the sale-leaseback over three years before filing suit, he argues that "he did not have actual knowledge of the harmful consequences of [the sale-leaseback] to the future of the company until much later." (Br. in Opp. at 30.) The Seventh Circuit has advised the "the relevant knowledge for triggering the statute of limitations [in ERISA cases] is knowledge of the *facts* or *transaction* that constituted the alleged violation. Consequently, it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality." *Martin v. Consultants & Admrs., Inc.*, 966

---

[4]Defendants also argue that plaintiff's claim should be dismissed because the sale-leaseback was a corporate act to which ERISA does not apply. *See Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992) (holding that "ERISA's fiduciary duties under § 1104 attach only to transactions that involve investing the ESOP's assets or administering the plan"). Because the court concludes that plaintiff's claim arising out of the sale-leaseback is barred by the statute of limitations, it need not decide this more difficult issue.

7

F.2d 1078, 1086 (7th Cir. 1992). Plaintiff had knowledge of the transaction of which he now complains, as well as concern about its propriety, in October 2001. When the company refused to disclose to him the purchase price for the property, he discovered it on his own within a couple of months by consulting public records. (Brostrom Aff., Ex. B, Buckmaster Dep. at 36.) The fact that he did not fully understand the consequences of the transaction at that time does not avail him now. Nor, in light of plaintiff's knowledge of the transaction, can he proceed under ERISA's six-year statute of limitations for actions involving "fraud or concealment." 29 U.S.C. § 1113. Accordingly, defendants' motion will be granted with respect to plaintiff's claim arising out of the 2001 sale-leaseback.

Defendants argue that the conclusion that ERISA's statute of limitations bars plaintiff's claim arising out of the 2001 sale-leaseback suffices to dispose of this case. They assert that all the damages plaintiff seeks actually arise out of the 2001 sale-leaseback, rather than any action of defendants connected to the 2004 Auer sale. However, the court does not take such a narrow reading of plaintiff's claims. While part of plaintiff's complaint is his allegation that the sale-leaseback resulted in a purchase price over $10 per share less than it would have been had Service & Supply still owned the real estate at issue, plaintiff also claims that defendants withheld information from TSI so as to keep TSI from formulating a "top-dollar" bid for Service & Supply, and kept ESOP participants from learning about TSI's bid to purchase Service & Supply.[5] This

---

[5] Plaintiff also contends, at least in places (Br. in Opp. at 21; Prop. Concl. of Law 61(b), 63-64, 66), that Wyman, in order to induce plaintiff and others to vote for the sale, falsely represented to plaintiff that no promises of employment after the sale had been made, when Wyman had in fact received a promise of employment with Auer. However, in his proposed findings of fact, plaintiff states that Don Curtis, a representative of Auer, told the ESOP participants on September 29, 2004, that Wyman would continue as head of the operation after the purchase. (PPFOF ¶ 47.) Accordingly, the court concludes that no issue of material fact remains concerning the ESOP participants' knowledge of promises of employment made to Wyman.

8

activity allegedly took place in 2004. Claims arising out of defendants' conduct in 2004 are not barred by ERISA's statute of limitations. Accordingly, to the extent plaintiff seeks damages arising out of the 2004 sale of the company that are not reflected in the decrease in value that resulted from the sale-leaseback, the court concludes the claim is not barred by the statute of limitations.

Defendants further argue, however, that there are additional reasons why plaintiff's claim relating to the sale of Service & Supply must be dismissed. Plaintiff seeks relief under §§ 502(a)(2) and (3) of ERISA, 29 U.S.C. §S 1132(a)(2) and (3). Section 502(a)(2), defendants contend, only allows relief on behalf of the plan. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985); *Magin v. Monsanto Co.*, 420 F.3d 679, 687-88 (7th Cir. 2005) ("ERISA allows for an action to enforce and seek appropriate relief because of a breach of fiduciary duty, [but] recovery from such actions . . . must go to the plan as a whole, and not the individual beneficiary."). Since plaintiff is seeking recovery for individualized injuries, defendants argue that his claim under § 502(a)(2) should be dismissed.

Plaintiff does not dispute that relief under § 502(a)(2) is limited to the plan, and does not oppose dismissal of his claim for individual relief under that section. Plaintiff also contends, however, that he seeks relief for the plan as well and, indeed, he does. His complaint seeks "an order compelling the Defendants to make good the losses to the Plan and to restore to the Plan any profits made through each ERISA breach .... (Compl. ¶ 49 b.) To the extent he is seeking relief for the Plan, plaintiff contends, his claim under § 502(a)(2) survives.

The court agrees that a participant in an ERISA plan may assert a claim against the plan fiduciaries under § 502(a)(2), but he must do so either as a representative of the plan in a derivative action or as representative of the beneficiaries in a class action. *Thornton v. Evans*, 692 F.2d 1064,

9

1079 (7th Cir. 1982). To bring a derivative action, a plaintiff must comply with Fed. R. Civ. P. 23.1, which requires, *inter alia*, that the plaintiff allege in a verified complaint "with particularity, the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ. P. 23.1. Plaintiff has made no effort to comply with Rule 23.1, however, and has instead attempted to bring his case as a class action. His effort to proceed as representative of a class also fails. Although in his complaint plaintiff purports to sue on his own behalf and on behalf of all those similarly situated, the case fails to meet the first prerequisite for a class action – namely, that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23. Defendants point out in support of their motion to strike the putative class that there were only nineteen active participants in the plan at issue as of January 2004, and seven of the nineteen were not fully vested. (Wyman Aff., Ex. A.) Twelve potential members does not meet the numerosity requirement of Rule 23. *See Kendrick v. Jim Walter Homes, Inc.*, 545 F. Supp. 538, 540 (S.D. Ind. 1980) (holding forty-two members does not render joinder impracticable). Accordingly, defendants' motion to strike the putative class will be granted and plaintiff cannot proceed as a representative of the beneficiaries in a class action. It follows also, then, that plaintiff cannot assert a claim under § 502(a)(2).

Plaintiff also seeks relief under § 502(b)(3), 29 U.S.C. § 1132(b)(3). Under this section, defendants contend, plaintiff is limited to equitable relief. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). Although plaintiff's complaint includes specific requests for equitable relief, defendants argue that his real claim is for compensatory damages and that couching his request for relief in equity does not change its character. *See Mertens v. Hewitt Associates*, 508 U.S. 248, 255

10

(1993) ("Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory damages - monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of legal relief."); *see also Great West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 221 (2002) (holding that judicially decreed reimbursement of medical expenses paid by ERISA insurer amounts to legal relief and is therefore not available under § 502(a)(3)).

Here, also, the court finds defendants' argument persuasive. Although plaintiff requests various forms of nominally equitable relief in his complaint, he fails to explain what form such relief could take given the circumstances of the case. Service & Supply has been sold and most of its former employees now work for Auer. The ESOP no longer exists, and none of the defendants continue as ERISA fiduciaries. Throwing out terms like "constructive trust," "rescission," or "disgorgement", without explaining how they might apply under the facts of this case, is not enough to get by the language of § 502(a)(3) and the holdings of the Court in *Mertens* and *Knudson*. Notwithstanding plaintiff's appeal to equity, it appears clear that what he is really seeking is an order that Wyman and/or the other defendants pay him the difference between what he actually received when the Company was sold and what he believes he should have received. An order requiring a defendant to pay the plaintiff damages for breach of fiduciary duty is legal relief. As such, it is not available under § 502(a)(3).

Defendants finally argue that plaintiff may not recover punitive damages on his ERISA claim. The law clearly accords. *See Russell*, 473 U.S. at 144 (1985) (holding that punitive damages are not recoverable under § 1132(a)(2) of ERISA); *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 626-27 (7th Cir. 1987) ("[P]unitive damages are not recoverable under § 1132(a)(3) of

11

ERISA."). Plaintiff's contention that the court should withhold summary judgment pending the completion of discovery (Br. in Opp. at 32) is without merit. No amount of discovery will rewrite ERISA's remedy provisions, and those provisions do not permit the recovery of the relief plaintiff seeks.

## CONCLUSION

For the foregoing reasons, defendants' motion to strike plaintiff's affidavits (docket # 61) is **denied** as moot. However, defendants' motions to strike putative class (docket # 35) and for summary judgment (docket #32) are hereby **granted**, and the clerk is directed to enter judgment in favor of the defendants dismissing the action with prejudice.

**SO ORDERED.**

Dated this   23rd   day of June, 2006.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge